# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### February 20, 2019 Session

## DWAYNE COCHRAN v. TOWN OF JONESBOROUGH, TENNESSEE

**Appeal from the Circuit Court for Washington County**
**No. 37569      James E. Lauderback, Judge**

_____

### No. E2018-01512-COA-R3-CV

_____

After the plaintiff was arrested by a police officer employed by the defendant town, the plaintiff brought suit in federal court alleging that his civil rights were violated during the course of the arrest. Plaintiff further alleged that the town was negligent in its training and supervision of the arresting officer. The federal court dismissed the civil rights claims with prejudice, but declined to exercise supplemental jurisdiction over the plaintiff's negligence claim against the town. As such, the plaintiff filed a second complaint in the Circuit Court for Washington County, in which the plaintiff again alleged that the town was negligent in its supervision and training of the arresting officer. After the town filed a motion to dismiss, the trial court concluded that immunity under the Tennessee Governmental Tort Liability Act was not removed as to the Plaintiff's claims because the negligence claim arose out of the alleged violations of Plaintiff's civil rights; accordingly, the trial court determined that Tennessee Code Annotated section 29-20-205(2) preserved the Defendant's immunity, and dismissed the case with prejudice. Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and THOMAS R. FRIERSON, II, J., joined.

Gary Prince, Knoxville, Tennessee, for the appellant, Dwayne Cochran.

K. Erickson Herrin, Johnson City, Tennessee, for the appellee, Town of Jonesborough, Tennessee.

## OPINION

## Background

This case arose after the arrest of Dwayne Cochran ("Appellant") by a police officer employed by the Town of Jonesborough ("Appellee" or "Town of Jonesborough") on March 17, 2016. The undisputed facts reflect that on the day in question Appellant, who is a farmer, blocked a Jonesborough road with his dump truck in an attempt to unload the truck's contents onto Appellant's property. In the process, Appellant's vehicle became stuck such that it extended perpendicularly into the road and blocked the flow of traffic. While Appellant attempted to remove the truck, a neighbor called the Jonesborough police and Officer Jonathan Peace ("Officer Peace") arrived and placed Appellant under arrest for blocking the roadway. The criminal charges against Appellant were later dismissed.

As a result of these events, Appellant filed suit against Officer Peace, the Town of Jonesborough, the mayor of Jonesborough, and Appellant's neighbor, Derrick Sumner,[1] in the United States District Court for the Eastern District of Tennessee ("district court") on March 16, 2017. Essentially, Appellant averred that his arrest was part of a larger political conspiracy and was a consequence of Appellant's outspoken criticism of the mayor of Jonesborough. According to Appellant, Officer Peace lacked probable cause to arrest Appellant; moreover, Appellant alleged that he was injured by Officer Peace during the handcuffing process in that the handcuffs were unnecessarily tight and caused the Appellant to suffer nerve damage in his hands. Appellant averred that as a result, he was forced to undergo surgery and now suffers from ongoing issues with his hands.

Appellant's federal claims against the Town of Jonesborough and Officer Peace were brought pursuant to 42 U.S.C. § 1983. Specifically, Appellant alleged various violations of his constitutional rights sounding in unlawful arrest, malicious prosecution, and First Amendment retaliation. A claim of excessive force was brought against Officer Peace only. Appellant also pleaded various state law claims such as false arrest and imprisonment, assault and battery, malicious prosecution, and negligence under the Tennessee Governmental Tort Liability Act ("GTLA"). With regard to the negligence claims under the GTLA, Appellant asserted that the Town of Jonesborough was directly liable for its failure to train and supervise Officer Peace in proper handcuffing procedure, as well as being vicariously liable for Officer Peace's negligence in injuring Appellant. In response, Officer Peace filed a motion for summary judgment in the district court, arguing that qualified immunity shielded him from liability as to all claims.

---

[1] The claims against Mr. Sumner and the mayor of Jonesborough were dismissed with prejudice prior to the disposition of the claims against Officer Peace and the Town of Jonesborough, and neither the mayor nor Mr. Sumner is a party to this appeal.

On March 2, 2018, the district court entered a memorandum opinion granting Officer Peace's motion for summary judgment, concluding that Appellant failed to offer sufficient evidence to raise a genuine issue of material fact as to any of the claims against Officer Peace. As such, all claims against Officer Peace were dismissed with prejudice. Moreover, the district court concluded that several counts alleged against the Town of Jonesborough were predicated upon the behavior of Officer Peace, and as such the district court *sua sponte* determined that those counts should be dismissed with prejudice as well. In so ruling, the district court pointed out that "an award of damages against a municipality is not authorized when a jury has already concluded that no individual officer inflicted an underlying constitutional harm." Accordingly, the district court held that because "no reasonable jury could find that [Officer] Peace violated [Appellant's] constitutional rights" with regard to Plaintiff's unlawful arrest, malicious prosecution, and First Amendment retaliation claims, Appellant's complaint should likewise be dismissed with prejudice. Thereafter, the only remaining count was Appellant's GTLA negligence claim against the Town of Jonesborough, over which the district court declined to exercise its supplemental jurisdiction. As such, that claim was dismissed without prejudice by the district court.

Appellant then refiled his suit against the Town of Jonesborough (hereinafter "Appellee") in the Circuit Court of Washington County ("trial court") on March 20, 2018. Therein, Appellant alleged that per 28 U.S.C. § 1367(d), the statute of limitation on Appellant's state law negligence claim was tolled by the filing of the original complaint in the district court, and that Appellant's complaint to the trial court was therefore timely.[2] As to the substantive allegations, Appellant asserted that Appellee should be held liable under the GTLA, specifically Tennessee Code Annotated section 29-20-205, "for its direct negligence and for the direct negligence of its employees acting within the

---

[2] 28 U.S.C. § 1367 provides, in relevant part, that

     (a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.
     Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

*     *     *

     (d) The period of limitations for any claim asserted under subsection (a), and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.

There is no dispute that Appellant's complaint in state court was timely under this statute.

course and scope of [his] employment." In Appellant's view, Appellee was directly liable for breaching the standard of care "in training and supervising its employees in how to make lawful arrests free of violence and . . . in the use and application of handcuffs." Appellant also asserted that Appellee should be held vicariously liable under section 29-20-205 "because of the negligence of Officer Peace in the effectuation of the arrest of [Appellant]."

Appellee responded with a motion to dismiss on April 26, 2018. Therein, Appellee urged that Appellant's action was barred in its entirety by the GTLA's "civil rights" exception, found at section 29-20-205(2). In support, Appellee pointed out that Appellant's negligence claim and his federal civil rights claims arose out of the same cause of action, and that the allegations in Appellant's second complaint were identical to the allegations in the first complaint. As such, Appellee asserted that it retained sovereign immunity under the GTLA by virtue of section 29-20-205(2), because the negligence claim was, in essence, a claim that Appellee had violated Appellant's civil rights.

Following a hearing, the trial court entered a written order dismissing all of Appellant's claims on August 13, 2018. In its order, the trial court noted that "[a] review of [Appellant's] federal lawsuit and comparison to his current Complaint in state court reveals that his negligence claims arise from the same set of facts upon which he alleged that his constitutional and civil rights had been violated." Accordingly, the trial court concluded that the "'civil rights exception' to the removal of sovereign immunity under the GTLA bars the plaintiff's negligence claims against [Appellee]." Appellant's complaint was dismissed with prejudice in its entirety, and a timely notice of appeal was filed with this Court on August 21, 2018.

## Issue Presented

The parties have raised only a single issue for review: Whether the trial court erred in dismissing Appellant's state law negligence claim on the basis that the 'civil rights exception' found at Tennessee Code Annotated section 29-20-205(2) was applicable and preserved Appellee's sovereign immunity.

## Standard of Review

This case was decided on a motion to dismiss. A motion to dismiss "challenges 'only the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence.'" *Phillips v. Montgomery Cty.*, 442 S.W.3d 233, 237 (Tenn. 2014) (quoting *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011)). The defendant "'admits the truth of all the relevant and material allegations contained in the complaint, but . . . asserts that the allegations fail to establish a cause of action.'" *Id.* (quoting *Webb*, 346 S.W.3d at 426). Our determination is based on the

pleadings alone. *Id.* We review the trial court's decision on a motion to dismiss de novo with no presumption of correctness. *Id.* (citing *Cullum v. McCool*, 432 S.W.3d 829, 832 (Tenn. 2013)).

## Discussion

In the present case, the single dispute on appeal centers on the application of a subsection of the GTLA, found at Tennessee Code Annotated section 29-20-205(2), and whether Appellant's negligence claim arises from "civil rights" such that the subsection is applicable. Accordingly, a brief overview of the GTLA is beneficial here.

The GTLA provides, in relevant part, that "all governmental entities shall be immune from suit for any injury which may result from the activities of such governmental entities wherein such governmental entities are engaged in the exercise and discharge of any of their functions, governmental or proprietary." Tenn. Code Ann. § 29-20-201(a); *see also* *Limbaugh v. Coffee Med. Ctr.*, 59 S.W.3d 73, 79 (Tenn. 2001) ("[T]he General Assembly enacted the Tennessee Governmental Tort Liability Act . . . to codify the general common law rule that all governmental entities shall be immune from suit[.]").The GTLA also provides, however, that removal of governmental immunity is appropriate under certain circumstances. For example, Tennessee Code Annotated section 29-20-205 provides that immunity from suit "is removed for injury proximately caused by a negligent act or omission of any employee within the scope of his employment[.]" Thus, a plaintiff who has allegedly suffered an injury at the hands of a negligent government employee acting in the scope of his or her employment may bring suit against the relevant government entity.

Nonetheless, section 29-20-205 also goes on to provide for specific circumstances under which immunity is preserved. As is relevant to this case, section 29-20-205(2) explains that immunity is not removed where "the injury arises out of: false imprisonment pursuant to a mittimus from a court, false arrest, malicious prosecution, intentional trespass, abuse of process, libel, slander, deceit, interference with contract rights, infliction of mental anguish, invasion of right of privacy, **or civil rights**[.]" Tenn. Code Ann. § 29-20-205(2) (emphasis added). Consequently, this Court has previously held that where the "underlying acts which [a plaintiff] alleges to be negligent . . . [are] predicated on intentional tortious conduct involving the violation of [the plaintiff's] civil rights" by government employees, the "'civil rights exception' in Tenn. Code Ann. § 29-20-205(2)" is applicable. *Jackson v. Thomas*, No. M2010-01242-COA-R3-CV, 2011 WL 1049804, at \*7 (Tenn. Ct. App. Mar. 23, 2011) (citing *Campbell v. Anderson Cty.*, 695 F.Supp.2d 764, 778 (E.D. Tenn. 2010)).

As stated above, the dispute here centers on whether Appellant's GTLA claim arises from the alleged violation of his civil rights. Appellant asserts that his action in the trial court sounds in negligence, rather than civil rights. Indeed, the complaint avers that

Appellee is directly negligent for its failure to train and supervise Officer Peace and that Appellee is vicariously liable for the actions of Office Peace in arresting Appellant. In support, Appellant points out that the "well-pleaded complaint rule makes the plaintiff the master of the claim[,]" and that the allegations in the second complaint "are very specific that they concern negligent acts and not anything related to the alleged civil rights violations." Appellant also points out that the "[f]ederal [c]ourt specifically found . . . that there was no 'civil rights' violations." Accordingly, Appellant urges that section 29-20-205(2) does not apply to his state court action and that Appellee's immunity is removed.

On balance, Appellee argues that because Appellant's negligence claim is premised on the same factual allegations that underpinned Appellant's civil rights claims in the district court, section 29-20-205(2) indeed applies to Appellant's state law negligence claim. Specifically, Appellee urges that it was not necessary for Appellant to have explicitly alleged civil rights violations in his state court complaint, noting that nothing in the GTLA "requires this Court to ignore the fact that [Appellant] filed a federal district court complaint alleging civil rights claims and negligence claims based on the same facts." Appellee also urges that "any removal of sovereign immunity is to be *strictly construed*[,]" and that we "must apply the interpretation [of the statute] that *preserves* sovereign immunity." (emphasis in original). Further, Appellee points out that the vast majority of the case law addressing the civil rights exception supports a different interpretation of section 29-20-205(2) than the one now urged by Appellant. Having reviewed the record and the relevant case law, we must agree that the greater weight of authority favors Appellee's interpretation of section 29-20-205(2).

Indeed, our research reveals that this Court has addressed the civil rights exception previously; while Appellant's position is not completely lacking in support, Appellant cites only one Tennessee case that squarely buttresses his construction of section 29-20-205(2). Other Tennessee cases, however, decide the issue differently, and the federal courts of Tennessee have consistently applied the civil rights exception in 29-20-205(2) in the stricter manner urged by Appellee. Because much of the parties' dispute on appeal stems from the differing applications of section 29-20-205(2), an overview of the relevant case law is helpful.

We begin with Tennessee cases addressing the civil rights exception. This Court was faced with a highly analogous scenario in ***Jackson v. Thomas***, No. M2010-01242-COA-R3-CV, 2011 WL 1049804 (Tenn. Ct. App. Mar. 30, 2011). There, the plaintiff brought suit in state court against the Circuit Court Clerk of Jackson County as well as Jackson County itself after the clerk issued an invalid warrant for the plaintiff and the plaintiff was arrested. *Id.* at *1. The plaintiff's claims included civil rights violations under 42 U.S.C. § 1983, as well as various intentional torts and a negligence claim under the GTLA. *Id.* With regard to the negligence claim, the trial court granted the defendants'

motion to dismiss on the basis that the county retained immunity under the GTLA. *Id.* at *2. In doing so, the trial court concluded the following:

> [T]his Court finds that Jackson County has immunity from suit under the [GTLA] on [p]laintiff's statutory and common law tort claims. In this case, [p]laintiff claims that, as a result of the County's negligent supervision of [the county clerk], she was subjected to false imprisonment, false arrest, abuse of process, invasion of the right to privacy, defamation of character (libel), fraud, and malicious prosecution. Additionally, [p]laintiff claims that, as a result of these acts, she suffered emotional distress. However, pursuant to Tenn. Code Ann. § 29-20-205(2), the County retains its sovereign immunity for injuries that arise out of the foregoing intentional torts.

*Id.* at *5. On appeal, we affirmed the trial court, noting that because the GTLA claim "ar[ose] out of the assertion that her civil rights were violated[,]" the civil rights exception in section 29-20-205(2) applied. *Id.* at *7. This Court has come to the same conclusion in at least one other case. *See **Lankford v. City of Hendersonville**,* No. M2016-02041-COA-R3-CV, 2018 WL 1559971, at *10 (Tenn. Ct. App. Mar. 29, 2018) ("[W]e note that [the plaintiff's] negligence claim arose from the same set of facts upon which he claimed that his constitutional rights had been violated. For this reason, the civil rights exception provided in Tennessee Code Annotated § 29-20-205(2) would apply, and the City would retain immunity against the negligence claim as well.").

We reached a different result in **Parker v. Henderson Cty.**, No. W2009-00975-COA-R3-CV, 2010 WL 377044 (Tenn. Ct. App. Feb. 4, 2010). In **Parker**, the plaintiff filed suit in both state and federal court after he was shot by a Lexington City police officer during the execution of a search warrant. *Id.* at *2. The plaintiff's federal complaint included claims based upon 42 U.S.C. § 1983, as well as state law claims of negligence, assault and battery, and false arrest. *Id.* Like the present case, the federal court dismissed the plaintiff's civil rights claim, but declined to exercise jurisdiction over the state law claims. *Id.* With regard to the complaint filed contemporaneously in state court, the plaintiff alleged in part that the City of Lexington and Henderson County were negligent in supervising the officer who shot the plaintiff. *Id.* Following a bench trial, the trial court dismissed the claims against Henderson County, but found the city liable for negligence, agreeing that the sergeant in charge of executing the search warrant "was negligent in failing to properly supervise" the officer who shot the plaintiff. *Id.* at *2–3.

On appeal, the city argued that section 29-20-205(2) shielded it from liability because the plaintiff's "injury arose during a violation of his civil rights." *Id.* at *4. Indeed, the city asserted that it was "immune from liability . . . because [the plaintiff's] claims, in essence, derive from a violation of his federal civil rights." *Id.* In a single paragraph of analysis, this Court rejected the city's argument, stating that "[the plaintiff] .

- 7 -

. . has neither pleaded nor argued in the present proceeding that the City or its officers violated his federal civil rights." *Id.* at \*5. Accordingly, because the plaintiff filed a separate, contemporaneous negligence suit in state court, there was "no basis for this Court to conclude that [the plaintiff's] injury arose out of a violation of his federal civil rights." *Id.*

Consequently, there appears to be some conflict in how this Court has applied section 29-20-205(2) in the past. As Appellee points out, however, the federal courts of Tennessee have consistently held that when a plaintiff asserts claims, including negligence claims, against a governmental entity "in the context of a civil rights case, [the] alleged injuries arise out of 'civil rights'" and the entity is thereby entitled to immunity from suit pursuant to the civil rights exception. *Campbell v. Anderson County*, 695 F.Supp.2d 764, 778 (E.D. Tenn. 2010). In that vein, the precedent of the federal courts is analogous to *Jackson*, and weighs against *Parker* and Appellant's position.

For example, in *Campbell*, the plaintiff filed a complaint in federal court naming Anderson County, the Anderson County sheriff's office, as well as several sheriff's deputies as defendants. 695 F.Supp.2d at 770. She alleged that a reserve deputy working for the sheriff's office sexually assaulted her in the course of a transport and that as such, the defendants deprived her of her civil rights through their policy and custom of allowing reserve officers to transport female domestic violence victims without supervision. *Id.* at 771. In conjunction with her constitutional claims, the plaintiff's state law claims included false imprisonment, intentional infliction of emotional distress, assault and battery, and negligent supervision and training. *Id.* at 776. The federal court dismissed all of the plaintiff's claims with prejudice after the defendants moved for summary judgment. *Id.* at 777–78. In addressing the state law claims against the county, the court noted that the county could not be held liable for the intentional torts of its employee, and that there was no proof in the record showing that the county was negligent in hiring, training, or supervising the reserve officer who allegedly assaulted the plaintiff. *Id.* Importantly, the *Campbell* court noted that even if the record had contained evidence of the county's direct negligence in hiring, training, or supervising the officer, the civil rights exception in section 29-20-205(2) would nonetheless shield the county from liability:

> Campbell's tort claims of false imprisonment, assault and battery, intentional infliction of emotional distress, and negligence brought against the County under Tennessee law are predicated on the alleged violation of her civil rights by [the reserve officer]. The contention that [the reserve officer] committed false imprisonment, assault and battery, and intentional infliction of emotional distress clearly arise out of and directly flow from the allegations that he deprived Campbell of her civil rights by sexually assaulting her. Because Campbell asserts her claims against the County in the context of a civil rights case, her alleged injuries arise out of "civil

> rights" and the County is entitled to immunity from suit on these claims pursuant to the "civil rights" exception in Tenn. Code Ann. § 29-20-205(2).

*Id.* at 778. Accordingly, although the ***Campbell*** court alluded to the possibility that a direct claim against the county for negligent hiring, training, or supervision could be viable under certain circumstances, the court proceeded to point out that the civil rights exception would nonetheless apply and immunity under the GTLA would thus be preserved.

The ***Campbell*** holding was reiterated in ***Howard v. Knox County, Tennessee***, No.: 3:15-CV-6-TAV-CCS; No.: 3:15-CV-98-TAV-CCS, 2016 WL 9455169 (E.D. Tenn. Sept. 7, 2016), in which several plaintiffs brought suit against Knox County after allegations arose that a school teacher was physically abusing special education students. The claims alleged were, inter alia, violations to the minor plaintiffs' Fourteenth Amendment right to bodily integrity, and state law negligence claims against Knox County grounded in the hiring, training, placement, retention, and supervision of the allegedly abusive teacher. *Id.* at *3. Knox County moved to dismiss all of the negligence claims against it, arguing that "the action is in essence one seeking to vindicate an injury arising out of civil rights and thus it falls within the category of negligence claims for which the []GTLA preserves absolute sovereign immunity[.]" *Id.* at *10. In response, the plaintiffs proffered essentially the same argument as Appellant in the present case—that "the negligence claim - based on Knox County's hiring, and failing to train, an underqualified teaching assistant - can be distinguished from plaintiffs' claim for violation of their Fourteenth Amendment rights to bodily integrity . . . [because] the decision to hire an under-qualified applicant and failure to train the same differ factually and temporally from the teacher's subsequent unconstitutional act." *Id.* (record citations omitted).

The district court agreed with Knox County and dismissed all of the negligence claims against it with prejudice. *Id.* at *12, 22. In doing so, the district court discussed the interplay of negligent hiring, training, and supervision claims with the civil rights exception found in section 29-20-205(2):

> This Court has previously held that it is fair and reasonable to interpret the plain language of the TGTLA as meaning that civil rights claims - claims that arise under the federal civil rights law, 42 U.S.C. § 1983, and the United States Constitution - are a type of intentional tort for which counties retain absolute sovereign immunity. *See Hale* [*v. Randolph*, No. 1:02-CV-334], 2004 WL 1854179, at *46, 51 ("The city has immunity from suit under TGTLA for the negligent acts or omission of its employees if the injury arises out of the torts specified in Tenn. Code Ann. § 29-20-205(2)."). . . . Applying the above standard, the Court finds that plaintiffs' common law negligent hiring and training claim cannot survive because the

claim is in essence one for vindication of an injury arising from civil rights. . . . While plaintiffs might be correct that hiring and training [the teacher] constitutes an "independent act[ ] of negligence" distinct from [the teacher's] subsequent violation of plaintiffs' civil rights, simultaneous inclusion of the municipal liability claim against Knox County and reference to the County's hiring, placement, training, retention, and supervision of [the teacher] as examples of municipal policy inextricably tether the claim to the vindication of a "civil rights" injury.

*Id.* at \*11–12 (internal citations omitted). As such, the ***Howard*** court determined that because the plaintiffs' common law negligent hiring, training, and supervision claims were "inextricably" linked to their civil rights claims, the civil rights exception in 29-20-205(2) barred the negligence claims. *Id.* at \*11. Federal courts in Tennessee have followed similar reasoning to reach the same result in a number of cases. *See **Dillingham v. Millsaps***, 809 F.Supp.2d 820, 852 (E.D. Tenn. 2011) (dismissing with prejudice the plaintiff's negligent training and supervision claim where the allegations stemmed from "nothing more than [a] civil rights claim[,]" and the negligence claim was "still based upon an underlying claim of 'excessive force.'"); ***Johnson v. City of Memphis***, 617 F.3d 864, 871 (6th Cir. 2010) (upholding the district court's denial of the plaintiff's motion to amend where plaintiff sought to add a state law negligence claim, and noting that because "plaintiff's claim regarding the [defendant's] negligence arises out of the same circumstances giving rise to [plaintiff's] civil rights claim under § 1983[,]" immunity would be preserved and the proposed amendment was thus futile); ***Lundy v. Knox County, Tennessee***, No. 3:13-CV-588-TAV-HBG, 2014 WL 1491235, at \*4 (E.D. Tenn. Apr. 15, 2014) ("Here, defendants' alleged torts were committed solely in the context of plaintiff's claim for violation of his civil rights and constitutional rights. Therefore, the Court finds that these claims fall under the civil rights exception to the limited waiver of immunity under the GTLA.").

Returning to the present case, we are persuaded that Appellant's suit in the trial court is predicated on allegations that Appellee violated his civil rights. As an initial matter, we note that plaintiff's characterization of the claims in his complaint is not dispositive of this issue. In the context of applying the proper statute of limitations, we have expressly held that courts must look to the gravamen of the claim to determine the proper limitations period, rather than the characterization of the claim by the plaintiff. *See generally **Benz-Elliott v. Barrett Enterprises, LP***, 456 S.W.3d 140, 147 (Tenn. 2015) (quoting ***Whaley v. Perkins***, 197 S.W.3d 665, 670 (Tenn. 2006)) ("It is oft-recited law in this State that to determine the governing statute of limitations, a court must ascertain the 'gravamen of the complaint.'"). The same is no less true in the context of determining whether a governmental entity retains immunity under the GTLA. *See **Justice v. Anderson Cty.***, 955 S.W.2d 613, 615 (Tenn. Ct. App. 1997) (affirming dismissal of plaintiff's claim on the basis of immunity after determining that the gravamen of the claim sounded in intentional misrepresentation, rather than in contract as characterized by

- 10 -

the plaintiff). Thus, in order to determine whether immunity bars Appellant's claim, we must determine "the substantial point, the real purpose, or the object" of his action. ***Benz-Elliott***, 456 S.W.3d at 148 (citing ***Redwing v. Catholic Bishop for the Diocese of Memphis***, 363 S.W.3d 436, 457 (Tenn. 2012)).

To be sure, the premise of Appellant's state lawsuit is that Appellant was injured by the manner in which Officer Peace handcuffed and arrested Appellant.[3] Likewise, the direct complaints against Appellee result from Appellant's allegation that the excessive handcuffing was the result of Appellee's failure to properly train and supervise Officer Peace. As we perceive it, these allegations sound squarely in civil rights. Indeed, the term "civil rights" in section 29-20-205(2) has been construed "'as including claims arising under the federal civil rights laws and the U.S. Constitution.'" ***Jackson***, 2011 WL 1049804, at *6 (quoting ***Bettis v. Pearson***, No. 1:04-CV-112, 2007 WL 2426404, at *11 (E.D. Tenn. Aug. 21, 2007)); *see also* ***Campbell***, 695 F.Supp.2d at 778 ("This court construes the term 'civil rights' in § 29-20-205(2) as meaning and including claims arising under the federal civil rights laws, e.g., 42 U.S.C. § 1983 and the United States Constitution."). Further, it is well-settled that "excessively forceful or unduly tight handcuffing is a constitutional violation under the Fourth Amendment" and that "freedom from excessively forceful or unduly tight handcuffing is a clearly established right[.]" ***Courtwright v. City of Battle Creek***, 839 F.3d 513, 518–19 (6th Cir. 2016) (citing ***Baynes v. Cleland***, 799 F.3d 600, 613–14 (6th Cir. 2015); ***Marvin v. City of Taylor***, 509 F.3d 234, 247 (6th Cir. 2007)); *see also* ***Jackson v. Lubelan***, 675 F.App'x. 497, 500 (6th Cir. 2016) ("[H]andcuffing someone so tightly that the handcuffs themselves cause injury is indeed a clearly established violation of the Fourth Amendment[.]"). It is likewise well-established that "a governmental entity can be held liable under § 1983 for its failure to properly train and supervise its employees." ***Hale***, 2004 WL 1854179, at *11; *see also* ***Parker v. Henderson Cty., Tennessee***, 450 F.Supp.2d 842, 851 (W.D. Tenn. 2006) ("A plaintiff may bring an action for inadequate police supervision under § 1983."). Accordingly, the injuries Appellant alleges to have suffered stem from well-established civil rights, regardless of how Appellant chose to characterize those claims in his state action. *See* ***Dillingham***, 809 F.Supp.2d at 852 (dismissing with prejudice the plaintiffs' negligent training and supervision claim where the allegations stemmed from "an underlying claim of 'excessive force.'").

---

[3] For instance, Appellant's state court complaint avers the following:

> If trained properly, Officer Peace would have properly applied the handcuffs so that [Appellant] would not be injured by Officer Peace's negligent conduct in the use and application of the handcuffs. . . . Officer Peace breached the standard of care in the application of the handcuffs because he placed them on too tight, failed to see if they were too tight, failed to double-lock them so as to cause them to tighten, and failed to loosen them after complaints from [Appellant].

- 11 -

Finally, we are likewise unpersuaded by Appellant's argument that because the district court dismissed Appellant's federal claims at the summary judgment stage, there were no civil rights violations, and section 29-20-205(2) is thereby inapplicable. Appellant asserts in his brief that "the [f]ederal [c]ourt specifically found, based on the [d]efendants [m]otions, that there were no 'civil-rights' violations." Respectfully, we disagree. Nothing in the language of section 29-20-205(2) indicates that there must be an express finding that a civil rights violation occurred in order for the exception to apply. Indeed, immunity offered by section 29-20-205 is broad, preserving immunity for negligence claims so long as the "injury arises out of . . . civil rights." Tenn. Code Ann. § 29-20-205(2). Here, there is no dispute that Appellant originally claimed that his injuries arose from violations of his civil rights; moreover, the district court explicitly acknowledged that "excessively forceful or unduly tight handcuffing is a constitutional violation[.]" As such, the district court never concluded that the injuries alleged by Appellant did not sound in civil rights; rather, the district court simply concluded that Appellant failed to put forth sufficient evidence at the summary judgment stage to proceed with his action.[4] Moreover, none of the cases discussed herein indicate that section 29-20-205(2) requires the claimant to be successful in his or her civil rights claim in order for the civil rights exception to apply to corresponding state law claims. As such, Appellant's argument in this regard is simply without basis.

Based on the foregoing, we conclude that the trial court was correct in finding that section 29-20-205(2) was applicable to Appellant's suit and preserved governmental

---

[4] Specifically, with regard to the excessive force claim involving the handcuffing, the district court concluded that an essential element of Appellant's claim was lacking. This type of claim requires the " plaintiff [to] offer sufficient evidence to identify a genuine issue of material fact that (1) he complained the handcuffs were too tight; (2) the officer ignored those complaints; and (3) the plaintiff experienced 'some physical injury' resulting from the handcuffing." *Getz v. Swoap*, 833 F.3d 646, 654 (6th Cir. 2016) (citing *Morrison v. Bd. of Trustees of Green Twp.*, 583 F.3d 394, 401 (6th Cir. 2009)). In the present case, the district court determined that the excessive force claim could not survive because Appellant failed to show that material facts were in dispute as to the second prong:

> [I]t is undisputed that once [Appellant] voiced his complaint, Officer Peace did not ignore it. Rather, he asked [Appellant] additional questions in order to determine whether the cuffs were cutting off his circulation. But instead of answering Peace's inquiry—and potentially obtaining quicker relief—Cochran simply told him to "head on". . . . [Appellant] cannot shut down Officer Peace's inquiry as to the tightness of the handcuffs and then sue Officer Peace for ignoring his complaint regarding the tightness of the handcuffs. . . . Even viewing the facts in the light most favorable to [Appellant], the Court finds that Cochran has not offered sufficient evidence to raise a genuine issue of material fact as to whether Officer Peace ignored his complaints. Because this element is necessary to state a claim for excessive force and the corresponding claim for assault and battery, Peace's motion for summary judgment will be granted as to Counts 2 and 6

Accordingly, the district court's order reflects that the Appellant's proof as to the excessive force claim was lacking, not that the claim itself was not an alleged civil rights violation.

immunity as to Appellee. Although Appellant chose to file his second complaint under "the guise of negligence, this strategy fails." ***Jackson***, 2011 WL 1049804, at \*7 (citing ***Campbell***, 695 F.Supp.2d at 778). Importantly, our holding today is in keeping with the well-established principle that "statutes permitting suits against the State must be strictly construed." ***Moreno v. City of Clarksville***, 479 S.W.3d 795, 809–10 (Tenn. 2015); *see also* ***Limbaugh***, 59 S.W.3d at 83 ("[A]s the legislature created [the GTLA] in derogation of the common law . . . the Act must be strictly construed.") (citing ***Lockhart ex rel. Lockhart v. Jackson-Madison Cty. Gen. Hosp.***, 793 S.W.2d 943 (Tenn. Ct. App. 1990)); ***Hughes v. Metro. Gov't of Nashville and Davidson Cty***., 340 S.W.3d 352, 361 (Tenn. 2011) (quoting ***Doyle v. Frost***, 49 S.W. 3d 853, 858 (Tenn. 2001)) ("The GTLA's waiver of immunity is 'narrowly confined in its scope.'"). Keeping in mind that a strict construction approach to the GTLA "has been expressly incorporated into the Act[,]" we think it prudent, under these circumstances, to follow the greater weight of authority and embrace the application of section 29-20-205(2) that preserves immunity. ***Hughes***, 340 S.W.3d at 361 (citing ***Ezell v. Cockrell***, 902 S.W.2d 394, 399 (Tenn. 1995)). The present case arose based upon the allegations that Officer Peace was unlawfully aggressive in arresting Appellant, and that Appellee should be held responsible. As such, the "underlying act" of purported negligence at issue here, aggressive handcuffing, is clearly "predicated on intentional tortious conduct involving the violation of [Appellant's] civil rights by [an employee]" of Appellee. *Id.* Accordingly, based on the facts and circumstances in this particular case, this Court "sees no reason why the [Appellee] should not have immunity from suit under the 'civil rights' exception in Tenn. Code Ann. § 29-20-205(2)." *Id.*

## Conclusion

The order of the Circuit Court of Washington County granting the Town of Jonesborough's motion to dismiss is hereby affirmed, and this cause is hereby remanded for proceedings consistent with this Opinion. Costs of this appeal are taxed to Appellant, Dwayne Cochran, for which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE